## MILTON BEVANS *v.* STATE OF MARYLAND
## LEON HELLER *v.* SAME

[Nos. 17 and 18, January Term, 1942.]

444

*Decided March 3, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Ellis Levin,* with whom was *Harry G. Selden* on the brief, for the appellants.

*Robert E. Clapp, Jr., Assistant Attorney General,* and *Thomas N. Biddison, Assistant State's Attorney for Baltimore City,* with whom were *William C. Walsh, Attorney General,* and *J. Bernard Wells, State's Attorney,* on the *brief,* for the appellee.

COLLINS, J., delivered the opinion of the Court.

Milton Bevans and Leon Heller were convicted by a jury in the Criminal Court of Baltimore City on a joint indictment containing four counts. The first three charged them on July 7, 1941, with violating Article 27, Section 559, Code, 1939, commonly known as the "Rogue and Vagabond Statute" and in general with having upon or about them certain implements which were named in the indictment with intent feloniously to break and enter, in the first count a certain dwelling house, in the second count a certain warehouse, and in the third count a certain storehouse. The fourth count was for violation of the provisions of the Act of 1916, Chapter 653, codified as Section 1147 of Baltimore City Charter, 1938 Edition, commonly known as the "Vagrancy Statute." The date charged in the last count was the 7th day of June, 1941, and thence continually until the day of the finding of the indictment which was July 11, 1941. No demurrer was filed to the indictment as a whole or to any of the counts. A number of exceptions were taken at the trial below, some of which are abandoned on appeal.

The evidence in general showed that two members of the Baltimore Police Force on July 7, 1941, at about 2 A. M., were cruising in a car north on Central Avenue in Baltimore City at about Pratt Street and noticed two men walking slowly and cautiously south on Central Avenue. These men turned, slowed up at Watson Street and came down to Lombard Street. The officers in their car drove north on Central Avenue, turned into Lom-

bard Street, where the two men, who later proved to be the defendants, turned around and stopped. The officers asked them what their mission was down there. They stated that they were looking for Negro women. The defendants were taken to the Central District Police Station and were searched by the turnkey. On Leon Heller was found a registration card to a Buick coupe which was listed to a Dorothy Roberts. Heller was asked where he got the registration card and he said that he found it and was going to turn it over to Captain Cooney. The officers then went out and found this Buick coupe parked on the west side of Central Avenue north of Baltimore Street, between two other cars, the windows were down, the doors were open, and the key to this car and an extra large screw driver were on the floor mat. In the car were also found the burglarious implements listed in the indictment and, among other things, a circular with the mechanisms of the manufacturer's locks of the York Safe & Lock Company and a typewritten annotation on the stationery of the Commissioner of Motor Vehicles of the record of conviction of Milton T. Bevans. The officers also testified that the neighborhood where they saw the defendants is made up mostly of business places, but that just below that block are houses where colored people live. Both defendants denied any knowledge of the Buick car.

The first, third and fourth exceptions were taken to the admission of the testimony of the officers that about 12.05 A. M. on Sunday morning, June 29, which was about a week before the offense charged in the instant case, they were cruising on Baltimore Street and Central Avenue and they noticed a car coming through which was known to them. In the front of the car was the defendant, Heller, with the operator of the car and in the rear, crouched back, was Milton Bevans. It was not the same car as in the instant case. The automobile proceeded east on Baltimore Street, went south on Broadway, came west on Pratt Street. When they reached Central Avenue they slowed up and observed. They then

pulled up to Lombard Street and slowed up where the officers stopped them. This was just a block from where the car in the case now before us was found at rest a week later. When questioned by the officers, both of the defendants spoke up and said they were looking for women. The officers looked in the car and found nothing and let them go. The appellants contend that this testimony was not relevant to the charge in this case and its admission could serve no purpose except to prejudice the appellants in the minds of the jury. In this case appellants are charged in the indictment with an intent and any fact which supplies a motive for such act or which constitutes a preparation for it is admissible. *Brooke v. Winters,* 39 Md. 505; *Lamb v. State,* 66 Md. 285, 7 A. 399; *Baltimore Refrigerating Co. v. Kreiner,* 109 Md. 361, 368, 71 A. 1066; *Huff v. Simmers,* 114 Md. 548, 554, 79 A. 1003; *Meno v. State,* 117 Md. 435, 440, 83 A. 759; *Hitzelberger v. State,* 174 Md. 152, 161, 197 A. 605. In ruling on collateral matter, it is presumed that the court did its duty and all reasonable presumption necessary to uphold its rulings will be indulged. *Brooke v. Winters, supra; Maryland Elec. Ry. Co. v. Beasley,* 117 Md. 270, 277, 83 A. 157; *Baltimore & Ohio R. Co. v. State,* 107 Md. 642, 69 A. 439, 72 A. 340. In the instant case the fourth count charges a continuing offense from June 7, 1941, to July 11, 1941, and this occurrence on June 29 was, of course, within those dates. For these reasons the trial judge did not abuse his discretion in admitting the testimony, the subject of the first, third and fourth exceptions.

The fifth, sixth, seventh, eighth and ninth exceptions were taken to the admission in evidence of the tools, the paper containing the record of the Traffic Court violations of the defendant Bevans, and other articles found in the automobile, and to the refusal of the trial court to strike from the evidence the aforesaid articles found in the car and all allusions to them. Appellants contend that the arrest in this case was illegal and that this evidence procured as a result of a search incident to such

arrest is inadmissible. The only articles found on the defendants, according to the record, were the fountain pen searchlight and the registration card of the automobile, neither of which were offered in evidence. It is, therefore, unnecessary for us to pass upon the legality of this arrest. As to the articles found in the automobile registered in the name of Dorothy Roberts, at the time the registration card was found on the person of Leon Heller, he said that he had found the card and was going to turn it over the the police and both he and Bevans denied all knowledge of the automobile and the contents thereof. In discussing Code, 1939, Art. 35, Sec. 5, commonly known as the Bouse Act, Acts of 1929, Chapter 194, Judge Digges said in the case of *Baum v. State,* 163 Md. 153, at page 156, 161 A. 244, at page 245: "We are of the opinion that the provisions of Chapter 194 do not apply to these defendants, for the reason that the immunity from illegal search and seizure is a privilege personal to those whose rights thereunder have been infringed, and they alone may invoke it." - Cited are a wealth of authorities to sustain this view. Further he says at page 157 of 163 Md., at page 245 of 161 A.: "From the above authorities, and many others which might be cited it is certain that one cannot complain of an illegal search and seizure of premises or property which he neither owns, nor leases, nor controls, nor lawfully occupies, nor rightfully possesses, or in which he has no interest." *Frankel v. State,* 178 Md. 553, 562, 16 A. 2d 93; *Edward Leon, et al. v. State of Maryland,* 180 Md. 279, 23 A. 2d 706. Appellants cannot in one breath disclaim all interest in the automobile and in the next breath complain that their rights are infringed by a search of that automobile. Under the authorities above cited they, therefore, could not validly object to the admission of the articles in evidence. The fact that one of the defendants was sometimes known as Roberts and that later after their release from prison they produced to the authorities an order signed by Dorothy Roberts to take the car from the custody of the police officials

does not change our view. The paper found in the car containing the record of the convictions in a Traffic Court of Bevans is admissible not for the purpose of showing his former convictions, but only to show his connection with the car. Appellants cite the case of *Sugarman v. State*, 173 Md. 52, 195 A. 324. In that case the defendant at the time he was informed that it would be necessary for him to go to the station house for questioning stated that the automobile belonged to him. The testimony as to the articles found in the automobile and the introduction of those articles in evidence were proper.

Sometime after the jury retired they sent a message to the court that they had not been able to agree and asked for some information. The tenth exception of the appellants is to the instruction given the jury by the trial court. They were brought in court and the foreman stated as follows: "Your Honor, there seems to be some question in our minds as to the literal translation or knowledge of the law in so far as possession, or on his person, or about him. Now, if we could have instruction or interpretation of that, I think we could arrive at an agreement." To which the court replied, in part: "Well, gentlemen of the jury, I give you this instruction at your request; and it will be advisory in nature, and you are not obliged to accept it, because under the Constitution and laws and intrepretations thereof in Maryland, the jury is the sole judge of the law and the facts in a criminal case, and that my instruction of a judge on the law is purely advisory and not binding upon them." The judge reserved to each defendant an exception to the advisory instruction. An instruction in a criminal case must be strictly advisory. *Vogel v. State*, 163 Md. 267, 162 A. 705. It is reversible error if proper exception is taken, to be remedied on appeal if the instruction though advisory is an incorrect or erroneous statement of the law and the jury has followed it to the plain injury of the traverser. *Swann v. State*, 64 Md. 423, 425, 1 A. 872; *Beard v. State*, 71 Md. 275, 17 A. 1044, 4 *L. R. A.* 675, 17 *Am. St. Rep.* 536; *Cochran v. State*,

450

119 Md. 539, 552, 87 A. 400; *Klein v. State*, 151 Md. 484, 135 A. 591; *Vogel v. State, supra.* A part of the charge which appellants contend is erroneous because it is not a proper construction of the word "upon" as used in Article 27, Section 559, Code, 1939, *supra*, was in effect an instruction that the jury must find that the implements found in the car were in the possession of the defendants. This view has recently been sustained by this court in the cases of *Key v. State*, 167 Md. 218, 173 A. 246; and *Goldstein v. State (Bevans v. State of Maryland)*, 179 Md. 697, 22 A. 2d 471. We must further note that the first three counts of the indictment use the words "having upon and about them certain implements" and no demurrer was filed to this indictment or to any of the counts. Another part of the instruction to which the appellants particularly object is the statement by the trial judge near the conclusion of his instruction that: "You have a perfect right to say you think you know more law about the case than the judge does, and you are going to apply your own knowledge of the law to the facts." This court feels that this part of the instruction was superfluous and totally unnecessary, but was not contrary to the former instruction. It is directly followed by the following statement: "You are exclusive judge of both the facts and the law." From the charge, the jury could not have reached any other conclusion than that they were the judges of both the law and the facts in the case. For the reasons herein given, the judgment must be affirmed.

*Judgment affirmed, with costs.*